No. 13,676.

WALLACE, RECEIVER, v. MILLIGAN, ASSIGNEE.

RECEIVER.—*Partnership.*—*Firm Assets.*—*Right of Action.*—A receiver of a partnership may, under the order of the court, take possession of all firm assets and collect all debts due to the firm, but his authority is confined to what are properly firm assets ; and where an action might not have been maintained by the firm, it can not be maintained by the receiver, except where the firm has been guilty of fraud against its creditors.

SAME.—*Individual Liability of Partner to Firm Creditors.*—*Not a Partnership Asset.*—The individual liability of a member of a partnership to the firm's creditors is not an asset of the firm, and in the absence of a statute authorizing the receiver of the partnership to enforce such liability in behalf of the creditors, he has no such power, and the right of action is in the creditors themselves.

SAME.—*Voluntary Assignment of Partner.*—*Payment of Individual Creditors.*—*Surplus.*—*Right of Receiver to Collect for Partnership Creditors.*—The receiver of an insolvent partnership, who holds his appointment under the superior court of a county, has no power by virtue of his appointment, nor can it be conferred upon him by an order of such court made upon petition of a part of the firm creditors, or otherwise, to collect for such creditors from the assignee of a member of the firm, who is not indebted to the partnership, and who made an assignment under the statute, which is pending in the circuit court, the surplus that may remain in the hands of the assignee after payment of the individual creditors of the assignor.

From the Marion Circuit Court.

*J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.

*B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellee.

ZOLLARS, J.—Prior to 1884, Stoughton A. Fletcher, Ingram Fletcher, Albert E. Fletcher and Thomas H. Sharpe, had been partners engaged in the business of banking under the firm name of Fletcher & Sharpe. On the 15th day of July, 1884, Stoughton A. Fletcher filed in the superior court of Marion county a complaint against his partners, alleging the insolvency of the banking firm, asking for a dissolution of the firm and an accounting between the partners, and for

the appointment of a receiver to take possession of and administer the affairs and assets of the bank and pay its debts *pro rata* among the several creditors.

Upon that complaint and an answer by the other partners, William Wallace, appellant herein, was appointed receiver of the assets of the firm of Fletcher & Sharpe, and duly qualified as such receiver, and, under the orders of the court, took possession of all the personal and real estate, and all the assets, rights, credits, moneys and effects held and owned by the firm. At that time, Ingram and Albert E. Fletcher were indebted to the firm. Subsequently, they caused to be conveyed to Receiver Wallace, for the benefit of the partnership creditors, all of their separate and individual real estate. Thomas H. Sharpe also, upon an order of the court, conveyed to the receiver for the benefit of the firm creditors, all his separate real estate, except what was set off to his wife as her interest therein as such wife. The banking firm owed to depositors over $1,507,801.78. It was ordered and directed by the court, at the December term, 1884, that the receiver should allow all claims of creditors holding certificates of deposit and pass-books of the firm, if shown to be correct by the firm books, and that he should issue to such creditors his certificates, in attestation of the indebtedness of the firm to them. In pursuance of the order, he issued certificates, three thousand four hundred and twenty in number, and for the aggregate sum of $1,548,099.80. Upon the issuance of the certificates, all of the creditors to whom they were issued surrendered to the receiver the original evidence of the indebtedness of the bank to them. Many of the certificates thus issued have been assigned to third parties. Thirty per cent. has been paid by the receiver and endorsed upon the certificates.

The partnership assets, and the individual property of Ingram and Albert E. Fletcher and of Sharpe, surrendered to the receiver, will not pay over forty per cent. of the partnership debts. Stoughton A. Fletcher was not indebted to the

firm.   Shortly after the appointment of appellant as receiver of the firm upon his complaint, he made an assignment to appellee, Harry J. Milligan, under the voluntary assignment law, who has since been in charge of the estate under the orders and directions of the circuit court.

On the 17th day of February, 1887, three of the partnership·creditors filed what is styled an intervening petition in the superior court, for and on behalf of themselves and all other creditors of the firm of Fletcher & Sharpe, with whom, as stated, it was impracticable to confer, in which they stated that the creditors of the firm exceed three thousand; that the assets in the hands of the receiver will not pay in full the partnership debts; that appellee, as the assignee of Stoughton A. Fletcher, has proceeded with the management of the estate until he has realized a sum sufficient to pay in full all of the individual creditors of Stoughton A., and that after payment of all such individual creditors, there will be left in the hands of the assignee a large sum of money which should be applied in payment of the firm creditors, after the firm assets shall have been exhausted; that to require each of the creditors of the firm to make new proof of their claims against the assignee of Stoughton A., in order to share in the surplus of his individual estate, would require the delay of months, and the expenditure of a large amount of money, in the way of costs; that in order for a full and proper distribution of the proper and available assets to the payment of the firm creditors, the surplus of the individual estate of Stoughton A., in the hands of the assignee, should come into the hands of the receiver, and thus under the jurisdiction of the superior court.

The prayer of the petition was, that Wallace, the receiver of the partnership, be also appointed receiver for the creditors, of all the surplus of the individual assets in the hands of the assignee, after the payment of the individual debts of Stoughton A., and that he be authorized, for said firm creditors, in his name as such receiver, to prove their claims

against the assignee, and to collect from him such surplus assets, and bring them into the superior court for distribution among the firm creditors.

Upon that petition, the superior court made an order appointing appellant, Wallace, receiver for said creditors of all the surplus of the individual estate of Stoughton A., in the hands of the assignee after the payment of the individual debts, and authorizing him for said creditors, and in his name as such receiver, to prove their claims against the assignee, and to collect such surplus from him, and take the same into the superior court to be distributed among the creditors of the firm of Fletcher & Sharpe.

On the 2d day of March, 1887, appellant filed his petition in the circuit court of Marion county, stating therein the facts above stated, and asserting therein also, as a part of the same, the facts stated in the petition of the above creditors, filed in the superior court.

The prayer of appellant's petition, so filed in the circuit court, is, that in order to avoid the delay and expense of the separate proofs against the assignee of Stoughton A., and the estate in his hands, by the many creditors of the firm of Fletcher & Sharpe, he be permitted, as the trustee and receiver for all of said firm creditors, to prove in his name, as against the assignee and the estate he represents, the amount of the claim of the firm creditors in the aggregate; that he be permitted, as the trustee and receiver of said firm creditors, to receive the amount due to all of them in the aggregate, in one sum, and that he be permitted to distribute the same under the orders and directions of the superior court.

Appellee, as the assignee of the estate of Stoughton A. Fletcher, appeared and filed a demurrer to appellant's petition. The circuit court sustained the demurrer. Appellant excepted, and brings the case here for a review of that ruling.

Mr. Wallace, it will be observed, was appointed by the superior court receiver of the firm of Fletcher & Sharpe. That

appointment carried into the custody of that court all the property and assets of the firm, of every description.

Mr. Milligan was and is the assignee, under the voluntary assignment law, of Stoughton A. Fletcher. That assignment carried into the custody of the circuit court, all of the individual property and assets of Stoughton A. Fletcher. That was the status of things, and of the parties, at the time the three firm creditors filed their petition in the superior court, asking that Mr. Wallace be authorized to go into the circuit court, file proofs of all the claims in favor of the firm creditors, and receive from the assignee the surplus of the individual estate of Stoughton A. Fletcher.

Whatever power and authority Wallace has, he must have, we think, under and by virtue of his appointment as receiver of the firm of Fletcher & Sharpe and the proper orders of the superior court made in the execution of that trust. The order subsequently made upon the petition of the three firm creditors can not properly be said to be, in any legal sense, a second appointment of Wallace as receiver of any one.

Receivers are not appointed simply to do for creditors what they may do for themselves in the collection of their claims. The prime object of a receiver is to do what creditors can not do, by taking charge of the assets of the debtor and holding, preserving and distributing them in an equitable manner. In other words, the prime object of a receiver is to protect and distribute a fund. He does not act simply as a collecting agent of the creditors.

If there are no assets belonging to the debtor, there is no necessity for a receiver. It can not be said, in the case before us, that Wallace was, in any legal sense, appointed receiver of the three petitioning creditors, or of any other of the creditors, nor can it be said that the order made upon their petition was an appointment of him as a receiver of Stoughton A. Fletcher. His estate, as has been seen, was already in the custody of the circuit court, to be applied first to the payment of his individual debts. There was no pend-

ing litigation between the firm creditors and Stoughton A. Fletcher, nor were his assets in jeopardy by way of prefer-ences, an unequal distribution, or otherwise.

It is not claimed, as we understand counsel, that Mr. Wallace is, in any sense, the receiver of Stoughton A. Fletcher. The most that can properly be said of the order of the superior court is, that it was a direction to the receiver, Wallace, theretofore appointed by it, to prove the firm debts against the assignee and individual estate of Stoughton A., and to collect the surplus of that estate after the payment of his individual debts by the assignee. Was that order valid and binding upon the assignee and the circuit court and all others concerned? The appointment of the receiver carried into the custody of the superior court all of the assets of the firm of Fletcher & Sharpe of every kind, and nothing more. That court had authority to make all orders, and to give to the receiver all directions proper and necessary in the execution of his trust, in collecting, holding and distributing those assets. Of all such orders and directions, all of the firm's creditors were bound to take notice. The appointment of the receiver, however, did not carry into the custody of the superior court the individual property of Stoughton A. Fletcher. To say that it did, would be to say that the assignment by him was void *ab initio.* That is not claimed. Neither did the appointment of the receiver carry into the custody of the superior court any surplus of the individual estate of Stoughton A. Fletcher after the payment of his individual debts.

A receiver of a firm may, under the orders of the court, take possession of all firm assets, and collect all debts due the firm, as such debts are firm assets. His authority is confined to what are properly firm assets. Where an action might not have been maintained by the firm, it can not be by the receiver, except where the firm may have been guilty of fraud against its creditors. High Rec. (2d ed.), sections 205, 315, 316.

Stoughton A. Fletcher was not indebted to the firm. That is stated in the bill. As a member of the firm, he was individually liable to the firm's creditors, but that liability was not a liability to the firm, and hence was not an asset of the firm. The firm, as such, could not have maintained an action against him upon that liability.

Had Stoughton A. Fletcher made no assignment, could appellant, by virtue alone of his appointment as receiver of the firm, have maintained an action against him upon his liability to the firm creditors? That question must be answered in the negative.

The liability of an individual partner for the debts of the firm is analogous to the liability of stockholders under statutes making them individually liable to the corporate creditors in an amount equal to the stock they may have. Or, as said in some of the books, the liability of such stockholders is analogous to the individual liability of partners. In some of the statutes upon the subject, authority is given to the receiver of the corporation to enforce such liability in behalf of the creditors. In the absence of such a provision, it has almost, if not quite uniformly, been held, that the liability of the stockholders is to the creditors, and that the receiver of the corporation can not enforce it. Mr. Cook, in his work on the law of Stocks and Stockholders, in speaking of such statutory liability of the stockholders, at section 216, says: "The statutory liability of the stockholder is created exclusively for the benefit of corporate creditors. It is not to be numbered among the assets of the corporation, and the corporation has no right or interest in it. It can not enforce it by an assessment upon the shareholders. Nor can the corporation upon the insolvency assign it to a trustee for the benefit of creditors. It is a liability existing directly and immediately from the shareholders to the corporate creditors. Accordingly a receiver of an insolvent corporation, intrusted with 'all the estate, property, and equitable interests' of the concern, has no power to enforce such a lia--

bility as this. The action to enforce can be maintained only by the creditors themselves, in their own right and for their own benefit."

We quote the above because it is a fair statement of the law as declared in the cases. See, also, Thompson Liab. of Stock., section 342; *Dutcher* v. *Marine Nat'l Bank*, 12 Blatchf. 435. In that case, a bill was filed by the assignee in bankruptcy of the Central Bank of Brooklyn, a corporation under the laws of the State of New York, against stockholders in that bank. The object of the bill was to enforce a provision of the Constitution of New York, which declares that the stockholders of such a corporation shall be individually liable for the debts of the corporation to the amount of the stock held by them respectively. It was held, that a demurrer to the bill should have been sustained, that such liability was not a part of the assets of the bankrupt corporation, and that no legal or equitable title, right or interest in such liability, passed to the assignee in bankruptcy of the corporation. See, to the same effect, *Bristol* v. *Sanford*, 12 Blatchf. 341; see, also, *Farnsworth* v. *Wood*, 91 N. Y. 308; *Wincock* v. *Turpin*, 96 Ill. 135; *Liberty Female College Ass'n* v. *Watkins*, 70 Mo. 13; *Wright* v. *McCormack*, 17 Ohio St. 86; *Jacobson* v. *Allen*, 20 Blatchf. 525.

In the case last above, the incorporating act of a bank in Chicago contained a section that "each stockholder shall be liable to double the amount of stock held or owned by him," etc. The receiver of the insolvent bank brought an action against stockholders to recover under that section. It was held that the right of action was not a part of the assets of the corporation, and that, hence, the receiver could not recover.

Upon the question of the individual liability of members of a drainage association in this State, which is, in some sense, analogous to the cases above, see the case of *Trippe* v. *Huncheon*, 82 Ind. 307.

The above cases are analogous to the case before us, and

authority, although the individual liability of a partner is more a separate liability to each one of the firm creditors than is the liability of a stockholder under the statutes above mentioned.

That the individual property of Stoughton A. is in the possession, and under the control, of his assignee, and thus in the custody of the circuit court, certainly will not enlarge the powers of the receiver of the firm to reach it. The individual property can not be seized for partnership debts in the first instance. It is reached ordinarily by a judgment and execution against the partner, enforcing his individual liability to the firm creditors. Here the individual property of Stoughton A. has been assigned for the benefit of creditors, and is in the custody of the circuit court. It can not be reached by judgment and execution, but a method somewhat similar is provided. Instead of an ordinary suit and judgment, the statute provides for the filing, contesting, and allowance of claims against the assignee, and the estate in his hands. Instead of an execution, the statute provides a mode of payment out of the individual estate. But because the mode of establishing the liability on the part of the individual partner, and the method of collecting from his individual estate, are different, by reason of his assignment, it does not follow that the right to enforce that liability is changed from the creditors to the receiver of the firm.

By virtue of his appointment, simply, he has no more right to collect from Stoughton A., or from his estate, by the method provided by the assignment law, than he would have by an ordinary judgment and execution.

It remains to be ascertained whether he has such right, by force of the order of the superior court, made upon the petition of the three firm creditors. Could that court have made such an order valid and binding upon, and conclusive against, the assignee, and the circuit court, without such a petition by the creditors?

It seems to us that it could not, for the reason that neither

the receiver, nor the court that appointed him, has anything to do with any property, except assets of the partnership.

As we have seen, neither the individual property nor the individual liability of Stoughton A. Fletcher was, or is, partnership assets. As the superior court, without a petition from the firm creditors, could not have made an order binding upon Stoughton A., directing the receiver to prosecute an action against him upon his individual liability to the firm creditors, so it could not make such an order valid against his estate, and binding upon his assignee and the circuit court.

We do not see how the petition of the three firm creditors did or could enlarge the powers of the superior court. That petition did not, and could not, change the individual assets of Stoughton A. into firm assets, and thus bring them within the jurisdiction of the superior court. It was not an application for leave, nor a suit by firm creditors, to prosecute in one action their several claims against Stoughton A., or his assignee, instead of proceeding each for himself. Whether, in any case, the firm creditors might prosecute in one suit their several claims against Stoughton A., or against his estate in the hands of his assignee, is a question we need not decide, because it is not before us. That they are not seeking to do.

It may not be amiss, however, to notice in passing that the estate of Stoughton A. is not in danger of preferences to the more active creditors, nor in danger of being removed and wasted by the individual partner; nor is there danger of vexatious litigations.

The voluntary assignment law provides a simple, convenient, and comparatively cheap method of establishing claims of creditors against the estate of the assignor, and of collecting from the assets in the hands of the assignee.

But, as we have said, the creditors are not prosecuting, or attempting to prosecute, a joint suit.

Their petition to the superior court was an application for

an order directing the receiver to proceed for them and in their stead.  We do not see how the order of that court, made upon the petition, can be held to be obligatory upon the assignee and the circuit court.   Unless thus obligatory, it was not error for the circuit court to sustain the demurrer to appellant's petition.

It is assumed in that petition that the proof of the several claims of the firm creditors, made to the satisfaction of the receiver and the superior court, may be sufficient in the circuit court, as against the assignee, and the individual estate of Stoughton A. in his hands, and that, therefore, the receiver may prove the sum of the whole, and thus avoid the expense of the proof of each individual claim.

That is assuming too much.   The voluntary assignment law provides a mode of proof of claims.   R. S. 1881, sections 2673, 2677.

The assignee has the right, if, indeed, it is not his absolute duty, to insist that all claims against the estate he represents shall be presented and allowed in the manner provided by the statute, which he has obligated himself to follow in the execution of the trust.   But whether a right or a duty, the superior court had no authority to prescribe for him a different rule of proof from that provided by the statute.   He was not bound by the direction of the superior court to the receiver, first, because he was in no way a party, and, in the second place, the superior court had no authority to make the order.   The want of authority is apparent upon the face of the proceedings in that court.

After a patient and careful examination of the whole question, we are constrained to hold that the judgment of the court below, sustaining appellee's demurrer to appellant's petition, should be affirmed.

Judgment affirmed, with costs.

Filed April 27, 1887.

ELLIOTT, C. J.—I concur in the conclusion reached in the

principal opinion, but it is my judgment that the partnership creditors might, upon proper complaint and a notice bringing all the creditors into court to answer it, obtain an order authorizing Receiver Wallace to receive and disburse the amount remaining in the hands of Assignee Milligan after the payment of Stoughton A. Fletcher's individual creditors.

Filed April 27, 1887.