MATILDA KOLB, Administratrix, Appellant, v. ADDIE B. MALL et al., Appellees.

**HUSBAND AND WIFE:** Contracts Between—Statutory Inhibition.
1 An agreement of a husband, in order to induce his wife to join in a conveyance of his land, to pay her a certain sum out of the purchase price is in violation of Sec. 3154, Code, 1897, prohibiting contracts touching the inchoate rights of one spouse in the other's property, and is unenforcible.

**FRAUDULENT CONVEYANCES:** Ratification of Unenforcible Con-
2 tract—Insolvency of Debtor. Although, upon performance of an invalid contract, the matter is at an end between the parties thereto, ratification by voluntary payment thereof is ineffective as to the creditors of the donor, unless he still has left on hand sufficient property for the payment of creditors, after the performance of the invalid contract.

**DEEDS:** Validity—Burden of Proof. A voluntary conveyance of
3 property without consideration, by a husband to his wife, is good as against his creditors, if, at the time thereof, he has remaining other property amply sufficient to pay all his debts; and the burden is upon the donor and the donee to show that, at the time the gift was made, the donor was solvent and had property remaining amply sufficient to pay his creditors.

**FRAUDULENT CONVEYANCES:** Grantor's Insolvency—Sufficiency
4 of Evidence. Evidence reviewed, in an action by a creditor to subject to a judgment property conveyed by a husband to his wife, and held sufficient to show that, after such conveyance, he had insufficient remaining property to pay his creditors.

**HOMESTEAD:** Date of Acquisition—Prior Indebtedness. In a cred-
5 itor's proceeding to subject to a judgment property conveyed

by a husband to his wife, *held* that the debt antedated the acquisition of the homestead right, and that the property was not exempt from such judgment.

FRAUDULENT CONVEYANCES: Creditor's Bills—Proceeding in
6    Rem—Establishment of Status of Insolvency. A creditor's proceeding to subject property conveyed by the debtor to the creditor's judgment, on the ground that it had been voluntarily conveyed, without leaving sufficient property remaining for creditors, is a proceeding *in rem*, and a finding therein as to the insolvency of the debtor settles that as his status.

*Appeal from Benton District Court.*—B. F. CUMMINGS, Judge.

OCTOBER 2, 1919.

SUIT to subject certain property to a judgment recovered against the defendant, Sam Mall. The petition was dismissed. Plaintiff appeals.—*Reversed.*

*C. W. E. Snyder,* for appellant.

*W. C. Scrimgeour* and *Nichols & Nichols,* for appellees.

SALINGER, J.—I. While indebted to plaintiff's decedent, defendant Sam Mall sold a farm to one Benda. The defendant Addie B. Mall, his wife, refused to join in the conveyance to Benda, unless her husband would pay her the sum of $6,000 out of the purchase price. The husband agreed to make such payment, and it was made. This sum was invested in a mortgage, which, as we gather from the record, is still owned by her. One prayer of the plaintiff is decree that, as to so much of the said $6,000 as may be necessary to pay plaintiff's claim in full, Addie B. Mall holds in trust for plaintiff. The appellant contends, appellees concede, and we hold, that this arrangement between husband and wife was unenforcible, because violative of Section 3154 of the Code, which prohibits any

1. HUSBAND AND WIFE: contracts between: statutory inhibition.

contract touching the inchoate right of one spouse in the property of the other. See *Shane v. McNeill,* 76 Iowa 459, and *Sharff v. Hayes,* 132 Iowa 609. Such a contract is invalid, and cannot be enforced, so long as it remains executory. *Garner v. Fry,* 104 Iowa 515. In avoidance of this, appellees urge the holding in *Garner v. Fry,*

**2. FRAUDULENT CONVEYANCES: ratification of unenforcible contract: insolvency of debtor.** supra, that, while the wife has no right to make such a demand, yet, if the demand be complied with, she may loan the sum received to the donor husband, and the mortgage given for such loan will be good against the creditors of the husband. But, while the *Garner* case does so hold, it still makes a distinction between the parties to such contract and the creditors of the husband. True, it holds that payment in performance of such contract constitutes, as between the parties, a voluntary payment (from which it, of course, follows that the husband could not recover what he has given, although the agreement to give violated the statute). But the case does more, and recognizes that the voluntary compliance with the unlawful contract is not effective against his creditors, unless, at the time when the donor carried out such contract, he had other property sufficient to pay his debts. The case emphasizes that the indebtedness of the husband had all been paid when payment under the contract was made; that the transaction was not had in view of creating other debts, and was without thought of defeating future creditors. It follows that though, upon performance of the invalid contract, the matter is at an end between the parties, such ratification by voluntary payment is ineffective as to the creditors of the donor, unless it is made to appear that such performance of the invalid contract still left sufficient property available to his creditors. It follows, in turn, that whether the mortgage into which said $6,000 was put can be subjected to the claims of this

plaintiff depends wholly upon what the evidence shows as to the solvency of the husband when he paid the $6,000.

II. The husband made two deeds to his codefendant wife. In addition to said $6,000, the plaintiff seeks to sub-ject the property conveyed by those deeds. If it be not concaded outright, the evidence leaves no room for doubting that said two deeds were voluntary, and that plaintiff was a creditor when they were made. The gift of the $6,000 and the two deeds transferred all the property of the husband to the wife.

3. Deeds: valid-ity: burden of proof.

The parties agree, and we hold, that, in these circum-stances, the gift of the $6,000 and the conveyance by the two deeds are good against the plaintiff, if the evidence establishes that, at the time when the gifts and the deeds were made, Sam Mall had, in the language of *Strong v. Lawrence*, 58 Iowa 55, other property amply sufficient to pay all his debts. They agree, and we hold, that said gift and said deeds are not effective against the plaintiff, unless the defendants have shown by a preponderance that, at the time when said gift and said deeds were made, such was the financial condition of Sam Mall. See *Strong v. Lawrence,* supra, and *Tyler v. Budd,* 96 Iowa 29.

The determination of this appeal, then, involves the single question whether the defendants have shown by a preponderance that, when said gift and said two deeds were made, Sam Mall had property remaining, amply sufficient to pay all his creditors. The trial court finds that he then had such property. Is this finding sustained by a preponderance?

4. Fraudulent conveyances: grantor's in-solvency: suffi-ciency of evi-dence.

Having the burden, it cannot avail the defendants that plaintiff has not made it clear that Sam Mall was insolvent when he made said gift and said deeds. If a party has the burden of proof that, at a given time, there was solvency, it

does not discharge his burden that his adversary has failed to prove that, at that time, there was insolvency. *Farmers, etc., Bank v. Shaffer,* 172 Iowa 173. The testimony on this point was all put in by the plaintiff. While she was under no duty to prove that Sam Mall was at any time insolvent, and had the right to demand proof that, at stated and material times, he was solvent, yet if, in her volunteer proof, she establishes that solvency, of course the defendants may avail themselves of such proof. It does not matter how the preponderance is created, if it exists. The question, then, narrows to whether the testimony put in by the plaintiff shows that, at the times in question, Sam Mall had property left amply sufficient to pay his creditors. As said, it cannot help the defendants if the testimony put in by the plaintiff fails to make clear whether or not, at the times in question, Sam Mall was solvent, or that such testimony leaves that question in equipoise. Whatever the testimony lacks in weight tells against the defendants. Whatever it does not show is not proved. There is a stipulation that, in October, 1910, when Sam Mall borrowed the money upon which plaintiff's judgment rests, Mall was worth $25,000, invested in a certain farm, and then had other property. There is the presumption of continuity. If there were nothing here but this stipulation, we should be obliged to find that, when the gift and the deeds were made, Mall had an abundance left to satisfy his creditors. But it is shown by the undisputed testimony that the presumption of continuity cannot be indulged in. Mall no longer owns that farm, nor any of said other property. He has transferred everything he has to his codefendant, except such assets as are tabulated in the brief of the appellees. In effect, their sole defense is that the assets so tabulated were sufficiently greater than the confessed liabilities as that the rule in *Strong v. Lawrence* is met. In that list of assets is one share of capital stock in the Independent Harvester Com-

pany, of Plano, Illinois. As to this, the only evidence is that of Sam Mall, and it is that the share has a par value of $100; that he doesn't know where the certificate is; that he was subpoenaed to produce it in court, and did not bring it because he hadn't seen it for years. Another item is one share in a Creamery Company, testified to have a par value of $50, and to have been fully paid, without any showing as to its real value. But pass that, and assume that these two shares have some value, or even that they are worth par,— what do we find next? Counting these shares, and appellees make a list of assets aggregating $2,610. Included is a half interest in a hardware business, listed at $1,500. It was actually parted with for $800, and it is fairly apparent that that is its real value. Another item is $800, the surrender value of a policy of life insurance. Under Section 1805 of the Code, some life policies are exempt from execution, and others are not. It does not appear in the record whether this policy was made payable to the insured or to his wife. It is nowhere shown that the proceeds of this policy were subject to execution. If exempt from execution, they are not assets to creditors, and as to them, do not contribute to Mall's solvency. The burden was on the defendants to show by a preponderance that the property possessed by Mall and subject to execution was amply sufficient to pay his creditors. To say the least, it is not so shown that the interest in the hardware business was worth more than $800, or that the $800 received from the life insurance policy was subject to execution. Defendants, then, are not entitled to have these two items treated as assets, in passing upon the question of whether Sam Mall was solvent at the material times. Pretermitting all challenge of listed assets beyond these two items, and deducting from the total of $2,610 but these two items, and this reduces the assets to $910. The conceded liabilities, as listed by appellees themselves, amount to $1,707.

It is manifest, therefore, that, within the rule of *Strong v. Lawrence*, supra, the defendants have not met the burden of proof resting upon them, and that plaintiff was entitled to the relief demanded by her, unless it be that Lot 2 in Snyder's Addition, described in the petition, is protected by the homestead law. On a careful examination of the evidence, we reach the conclusion that it is not so protected, because the indebtedness on which the plaintiff's judgment rests antedates whatsoever homestead rights there may be in said lot.

5. HOMESTEAD: date of acquisition: prior indebtedness.

III. Because of findings made in earlier suits to which the Malls were parties, the same result must be reached.

It does not appear when the $6,000 was, in fact, paid over. It does appear that the warranty deed involved was executed on August 23, 1913, and the quitclaim deed on January 28, 1914. Most of the property transferred by the two deeds was in controversy in certain suits later brought, and pending in a court of competent jurisdiction. In one, defendant Addie B. Mall was plaintiff. In the other, she and defendant Sam Mall were defendants. The question at issue was whether the property transferred by said deeds should be subjected to the claims of creditors, and the turning point was whether Sam Mall had sufficient property remaining, after making said conveyances. In these earlier suits, the court subjected the property. Such decree was warranted only if it were found that, when the conveyances were made, Mall did not have sufficient property left to pay his creditors. Reasoning back from the judgment to what was necessary for its support, the decree in the earlier cases of itself settles that, when the conveyances in question were made, Mall was insolvent. *Smith v. Cretors*, 181 Iowa 189. A decree in bankruptcy or other insolvency proceedings is

6. FRAUDULENT CONVEYANCES: creditor's bills: proceeding *in rem*: establishment of status of insolvency.

conclusive evidence that all the facts necessary to sustain the decree were proved before the court. 2 Black on Judgments (2d Ed.), Section 807. Moreover, the court found expressly that Mall was indebted, and was "without any property whatever with which to pay his creditors." This finding is not, in the strict sense, an adjudication. It need not be pleaded as such. If it be anything, it is merely conclusive evidence that, at a certain time, a certain status existed. It was offered in evidence. It was objected to by the appellees, on the ground that it was irrelevant, immaterial, and not binding on the defendant Addie B. Mall. Fairly interpreted, this objection means that the decree is neither relevant nor material because it does not bind the defendant Addie B. Mall. We think the objection is not well taken. If it be not binding on Addie B. Mall, who was respectively plaintiff and defendant in the earlier suits, it is binding on no one, and we are of opinion that the finding that Mall was, at a stated time, insolvent, is binding on all the world. Insolvency is a status, and, if it be determined in a proper suit, one *in rem,* that insolvency existed at a stated time, that determination is available as evidence against all the world. A proceeding to subject property on the ground that it has been voluntarily conveyed, without sufficient property remaining to satisfy creditors, is, of course, a proceeding *in rem.* In a sense, it involves the bankruptcy of the creditor, as much as a bankruptcy proceeding under a Federal act, or insolvent proceedings under state statutes. No personal judgment is sought in proceedings to set aside such conveyances. The only relief prayed is that specific property be subjected to an existing judgment. Such suit can be proceeded with if all the defendants were nonresidents, could not be personally served, and did not appear. The *rem* itself, the property, is the only thing affected. In effect, such suit is an attempt to seize specific property and fasten a lien upon it. As said, it is, in a clear sense,

analogous to proceedings in bankruptcy, or under insol-
vency proceedings permitted by state statutes. A decree
under the bankruptcy law on petition in involuntary bank-
ruptcy, and wherein the debtor is adjudged a bankrupt, is
in the nature of a decree *in rem,* since it determines the
legal status of the debtor in that respect. Generally, an
adjudication of insolvency partakes of the nature of a judg-
ment *in rem*: it binds all persons, whether parties or other-
wise, and whether notified or not, as to the particular mat-
ter determined. 2 Black on Judgments (2d Ed.), Section
807. Issue being taken in involuntary bankruptcy as to
the existence of insolvency, the decree settles the status as
to whether there is insolvency. *In re Ulfelder,* 98 Fed. 409.
Insolvency proceedings culminating in an order appointing
a receiver may settle *in rem* that the debtor was insolvent.
*Baker v. Wyman,* 47 Minn. 177 (49 N. W. 649). A final
decree in proceedings by which the assets of an insolvent
corporation are administered through a receiver is conclu-
sive as to all matters which were or should have been liti-
gated in the course of such proceedings. *Diamond St. Iron
Co. v. Rarig,* 93 Va. 595 (25 S. E. 894, 895). Under a Mary-
land statute providing that preferences contained made by
an insolvent shall be void, the fact that the creditors pre-
ferred in the deed of assignment were not served with
process, and could not be forced into the proceeding, if so
served, does not deprive the insolvent court of jurisdiction.
For the deed becomes void by operation of law, as the re-
sult of the adjudication of insolvency, which, as a judgment
*in rem,* is binding on everyone. *Brown v. Smart,* 69 Md.
320 (14 Atl. 468). To like effect is *Merriam v. Sewall,* 74
Mass. 316.

The earlier suits, then, being proceedings *in rem,* settle
the status of Sam Mall as to all the world, whether notified
or not, or present or not. Be that as it may, it was cer-
tainly settled as to these two defendants who were parties

to the earlier litigation.   Indeed, the defendant Addie
claims rights in this very case, on account of having pur-
chased the judgments obtained by her adversaries in the
earlier case.   So we need make no new inquiry into the
facts.   It was conclusively settled in said proceedings *in
rem,* at least against these two defendants, that, at the
material times here, Sam Mall was insolvent.   As to the
status thus established, these two defendants are not at
liberty to go behind what is settled by the findings in the
earlier suits.

It is ordered that the decree below be reversed.   Satis-
faction of plaintiff's judgment shall be first attempted out
of Lot No. 2 in Block 4 in Snyder's Addition to Belle
Plaine, Iowa.   If not satisfied therefrom, resort shall next
be had, for so much as remains unsatisfied, to the west one
half of Lot 7 in Block 6, Hutton's First Addition to Belle
Plaine, Iowa.   If resort to both these is insufficient to sat-
isfy the plaintiff's judgment, for any deficiency remaining
there shall be subjected the mortgage received by Addie B.
Mall for the $6,000 paid to her by her husband and co-
defendant.   Plaintiff may have decree in this court, at her
election, on application therefor in rule time and manner.—
*Reversed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.